# United States Court of Appeals
## For the First Circuit

No. 24-2108

LUCIO IVALDO CABRAL FORTES TOMAR,

Petitioner,

v.

PAMELA J. BONDI,
Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Rikelman and Aframe, Circuit Judges,
and Elliott,[*] District Judge.

Maria S. Hwang, Committee for Public Counsel Services, for petitioner.
Robert D. Tennyson, Jr., Trial Attorney, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, with whom Yaakov Roth, Acting Assistant Attorney General, Civil Division, and Nancy E. Friedman, Acting Assistant Director, Office of Immigration Litigation, were on brief, for respondent.
Tiffany J. Lieu, Rafael Bichara, Meredith Gudesblatt, Crimmigration Clinic, Harvard Immigration and Refugee Clinical Program, Alexandra Arnold, and Cloherty & Steinberg LLP, on brief for Massachusetts Association of Criminal Defense Lawyers, as amicus curiae supporting petitioner.

---

[*] Of the District of New Hampshire, sitting by designation.

January 23, 2026

**ELLIOTT**, <u>District Judge</u>. In the underlying removal proceedings, the government sought to deport a lawful permanent resident after he was twice convicted under Massachusetts law for "open and gross lewdness." <u>See</u> Mass. Gen. L., ch. 272, § 16 (hereinafter § 16). The Board of Immigration Appeals (BIA) concluded that § 16 is categorically a "crime involving moral turpitude" (CIMT) under the Immigration and Nationality Act, <u>see</u> 8 U.S.C. § 1227(a)(2)(A), and affirmed an order of removal issued by an immigration judge (IJ). On petition for review, we hold that § 16 is not a CIMT under the categorical approach. We thus grant the petition and reverse.

I.

Lucio Ivaldo Cabral Fortes Tomar is a citizen of Cape Verde who entered the United States as a lawful permanent resident in 2003. After living in the country for nearly twenty years, Tomar was convicted of two separate violations of § 16, a felony prohibiting "open and gross lewdness and lascivious behavior." Following Tomar's second conviction, the government charged him as removable pursuant to § 1227(a)(2)(A)(ii).

Tomar moved to terminate the removal proceedings before the IJ on the ground that § 16 is not a CIMT. The government opposed, and the IJ denied Tomar's motion. The IJ subsequently ordered Tomar removed from the United States.

On administrative appeal, Tomar argued that the IJ erroneously concluded that § 16 is categorically a CIMT. Unpersuaded, the BIA affirmed the IJ's determination "that [Tomar's] statute of conviction categorically encompasses morally turpitudinous conduct." Tomar timely petitioned for review.

## II.

Although we generally may not review an order of removal predicated on a criminal conviction, 8 U.S.C. § 1252(a)(2)(C), we retain jurisdiction over the legal question of whether a state crime is a CIMT under federal immigration law. Id. § 1252(a)(2)(D); Mejia v. Holder, 756 F.3d 64, 67 (1st Cir. 2014). We review de novo the agency's interpretation of Massachusetts law. See Mejia, 756 F.3d at 67. Because the BIA provided its own analysis in affirming the IJ, "our review focuses on the BIA's decision, not the IJ's." Id.

## III.

A state conviction is grounds for deportation "only if, by definition, the underlying crime falls within a category of removable offenses defined by federal law." Mellouli v. Lynch, 575 U.S. 798, 805 (2015). Relevant here, § 1227(a)(2)(A)(ii) designates as deportable a noncitizen "convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct."

Under the "categorical approach," we determine whether a noncitizen's crime of conviction categorically involves moral turpitude by looking "only to the statutory definition of the offense, and not to the particular facts underlying the conviction." See Da Graca v. Garland, 23 F.4th 106, 110 (1st Cir. 2022) (quotations and alterations omitted). We consider the "'least of the acts' criminalized" by the statue. Coelho v. Sessions, 864 F.3d 56, 61 n.1 (1st Cir. 2017) (quoting Moncrieffe v. Holder, 569 U.S. 184, 190-91 (2013)). If there is a "realistic probability, not a theoretical possibility, that the [s]tate would apply its statute to conduct that falls outside" the immigration law definition of a CIMT, then the state law is not a categorical match and cannot serve as a basis for removal pursuant to § 1227(a)(2)(A)(i)-(ii). Da Graca, 23 F.4th at 113 (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007)).

For immigration purposes, a CIMT is defined as "conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." Da Silva Neto v. Holder, 680 F.3d 25, 29 (1st Cir. 2012) (quotations omitted). Beyond reprehensible conduct, moral turpitude requires a culpable mental state. See id. (citations omitted).

Consistent with those parameters, the BIA has long recognized that "indecent exposure is not inherently turpitudinous

in the absence of lewd or lascivious intent." Matter of Cortes Medina, 26 I. & N. Dec. 79, 82 (BIA 2013). Accordingly, for crimes of exposure or indecency to fall within the definition of a CIMT, "the statute prohibiting the conduct must require not only the willful exposure of private parts but also a lewd intent." Id. at 83.

### IV.

In affirming the order of removal against Tomar, the BIA determined that there is no realistic probability that Massachusetts will apply § 16 to conduct lacking lewd intent. On petition for review, Tomar argues that this constituted legal error. As Tomar interprets the statute, an intentional exposure without "any lewd, obscene, or sexual motivation" could support a conviction under § 16. The government, by contrast, contends that the statute requires lewd intent because it reads § 16 to require "intentional production of shock and alarm." We conclude that there is a realistic probability that Massachusetts will enforce § 16 against defendants who intentionally exposed themselves for a nonsexual purpose. Therefore, Tomar's convictions are not grounds for deportation.

At the threshold, the parties disagree as to the definition of "lewd intent" under Cortes Medina, 26 I. & N. Dec. at 82-85, although they agree that an element of lewd intent is necessary for an exposure offense to be a categorical CIMT. While

Tomar defines lewd intent to require sexual motivation, the government asserts that the BIA's definition is broader, extending "beyond a defendant's aim of sexual gratification, to obscene goals more generally," such as "sexual affront."

The government raises a definitional distinction without a difference. An intentional sexual affront indeed carries lewd intent, as do other acts fitting ordinary notions of what sexual motivation looks like. See Cortes Medina, 26 I. & N. Dec. at 84-85 (citing a sexual affront during a road rage incident as an example of lewd intent because the defendant shouted a "sexual expletive" while exposing himself to a woman); Barrera-Lima v. Sessions, 901 F.3d 1108, 1117 (9th Cir. 2018) (explaining that the BIA distinguished between "a juvenile who exposes himself to 'annoy and affront others, but not for purposes of sexual gratification,'" so lacks lewd intent, and "someone who engages in masturbation near women in a movie theatre," who is intentionally lewd (citing Cortes Medina, 26 I. & N. Dec. at 83-84)). The BIA thus "embraced a definition of lewd intent . . . restricted to sexually motivated exposure" "whether it be for sexual gratification, sexual affront, or some other sexual purpose entirely." Barrera-Lima, 901 F.3d at 1117, 1119 (citing Cortes Medina, 26 I. & N. Dec. at 83-85). Consistent with the Ninth Circuit, we proceed under that definition. Id.

Having resolved that "lewd intent" means a "sexual purpose," we turn to whether it is inherent in § 16. The parties agree that a § 16 conviction requires proof of five elements under Massachusetts law: "that the defendant (1) exposed genitals, breasts, or buttocks; (2) intentionally; (3) openly or with reckless disregard of public exposure; (4) in a manner so as to produce alarm or shock; (5) thereby actually shocking or alarming one or more persons." Commonwealth v. Maguire, 65 N.E.3d 1160, 1163 (Mass. 2017) (quotations omitted). The government first asks us to read lewd intent into the elements of the crime by inferring that the second element ("intentionally") runs not just to the physical exposure but also to the production of alarm or shock caused by the exposure. To the contrary, the word "intentionally" is best read to modify the element that immediately precedes it, "exposed," but not the subsequent elements.

The government's proposed reading of § 16 is chiefly undercut by the sequence of the elements as enumerated by the Massachusetts Supreme Judicial Court (SJC). We might be inclined to interpret the mens rea as trickling down to all aspects of the offense if "intentionally" prefaced all of the other elements, but such a reading of § 16 is unnatural given the arrangement of the elements as judicially construed. When listing the five elements of § 16, the SJC sandwiches "intentionally" between "exposed" and the subsequent three elements, which go to the manner and impact

of the exposure.  Maguire, 65 N.E.3d at 1163; see Commonwealth v. Quinn, 789 N.E.2d 138, 142-43 (Mass. 2003).  It is well established that the defendant must have "intentionally exposed" himself to be convicted under § 16.  Quinn, 789 N.E.2d at 143.  "Intentionally" thus indisputably modifies "exposed," see id., which makes sense because exposure is the only element already introduced in the sequence and the foundational actus reus of the crime.

The third element, "openly," disrupts the flow of the government's reading of "intentionally" as applying to subsequent elements.  Judicial interpretation of the openness prong requires that the defendant either "intended public exposure or recklessly disregarded a substantial risk of public exposure to others who might be offended by such conduct."  Commonwealth v. Ora, 883 N.E.2d 1217, 1220 (Mass. 2008).  Accordingly, "intentionally" cannot encompass "openly" because the openness element accepts the lesser mens rea of recklessness.

Because elements one and two ("intentionally exposed") are secluded from element three ("openly") by their incompatible minimum mental states, it is most straightforward to read elements four and five as similarly self-contained.  It would strain logic to construe the mens rea defined in the second element -- which clearly modifies the actus reus that precedes it -- as leapfrogging the third element to modify the fourth.  Further, because the "openly" prong sets out both an aspect of the proscribed conduct

and the requisite scienter as to that fact, it is fair to expect that if intent to "alarm or shock" were required, it would be expressed in the latter element. We are thus all but convinced, based on the judicially enumerated elements alone, that the only intentional act required by § 16 is an "intentional exposure of genitalia, buttocks, or female breasts to one or more persons," and that § 16 does not require an intent to produce shock or alarm. Quinn, 789 N.E.2d at 146.

The contours of each element as construed by the Massachusetts courts confirm that a § 16 conviction does not necessitate a finding that the defendant's conduct was in any way "sexually motivated." Barrera-Lima, 901 F.3d at 1119.[1] We first discuss the openness requirement, which merely requires the public nature of the exposure, and then explain why the alarm or shock elements do not suffice to establish lewd intent.

In addition to an "intentional exposure," the prosecution must show that the defendant acted "openly," which

---

[1] The government cites as authority the BIA's decision in Matter of J-, 2 I. & N. Dec. 533, 534 (BIA 1946), which concluded that § 16 involves moral turpitude because a "negligent, unintentional, or innocent exposure cannot be punished under [the] statute." Matter of J-, which pre-dates the categorical approach, found that § 16 is a CIMT because it criminalizes intentional public nudity, id., but Cortes Medina, which applies the controlling framework to an analogous statute, instructs that lewd intent and not mere intentional exposure is required to establish a categorical CIMT. 26 I. & N. Dec. at 83-84. Matter of J- therefore does not inform our analysis.

again means that he intended or recklessly disregarded a substantial risk that he would be seen by "others who might be offended by" his nakedness. See Quinn, 789 N.E.2d at 146. But openness does not necessitate lewdness, it simply requires that the defendant "imposed" his nudity "upon an unsuspecting or unwilling audience." Ora, 883 N.E.2d at 1219. In other words, someone who intentionally appears naked before an audience of consenting adults does not violate the statute, but uninvited public nudity is offensive enough to be "open." Id. (citing City of Revere v. Aucella, 338 N.E.2d 816, 818-19 (Mass. 1975)).

Thus, intentional public nakedness may be sufficient to satisfy the first three elements of § 16, see Ora, 883 N.E.2d at 1219-21, consistent with the statute's "central purpose . . . of preventing fright and intimidation, particularly [of] children." Id. at 1220. Absent so far is any requirement that the defendant's exposure was purposefully or knowingly lewd; a defendant need not intend to arouse his own sexual desires or intend to impose his sexuality on others. See Cortes Medina, 6 I. & N. Dec. at 83-85. Nonsexual acts like "'mooning' oncoming traffic" or "nude sunbathing" could suffice to show an intentional open exposure, see id., and such conduct could probably meet all five elements if actually and objectively "shocking or alarming." Maguire, 65 N.E.3d at 1163.

The government, however, urges that beyond intentional and open nudity, § 16 requires that the defendant "act[ed] intentionally in a way to produce 'shock or alarm.'" To the contrary, the judicial construction and application of the "alarm or shock" elements confirms our conclusion that the requisite intent is cabined to the exposure. While the first three elements of § 16 focus on what the defendant did and his mental state when he did it, the latter prongs turn the factfinder's attention to the impact on witnesses to the conduct, without regard to whether the defendant intended that effect. See Maguire, 65 N.E.3d at 1162, 1164-65.

Beyond a defendant's intentional, open exposure, § 16 requires proof of "manner (done in such a way as to produce alarm or shock), and impact (does in fact alarm or shock)." Quinn, 789 N.E.2d at 142. The "alarm or shock" requirement "has both a subjective and an objective component." Maguire, 65 N.E.3d at 1162. While the fifth element requires that a witness "in fact" experienced subjective "alarm or shock," the fourth element asks whether that "was an objectively reasonable reaction in the circumstances of the conduct." Id. at 1163-65.

At oral argument, the government clarified that it does not contend that § 16 requires specific intent to alarm or shock. The government argues instead that the objective component of alarm or shock modifies the intentional exposure, such that the defendant

- 12 -

must intend an exposure of the type that would be shocking or alarming to a reasonable person.  We acknowledge that the most common articulation of the fourth element, "in a manner so as to produce alarm or shock," in a vacuum can be read to suggest that the defendant must intend to do something alarming or shocking.  But contrary to that reading, courts have construed the fourth element as an objective requirement.  Thus, the government's argument substitutes a factfinder's determination that society considers particular conduct shocking or alarming, which the Massachusetts courts have determined is required, see Maguire, 65 N.E.3d at 1165, for a finding as to the defendant's subjective intent in acting that way, which no court has yet read into § 16.

To start, the government rests one false equivalence on another by assuming that objectively shocking or alarming nudity must be lewd.  True, the objective component requires that an objectively reasonable person would be offensively alarmed or shocked.  Commonwealth v. Waterman, 158 N.E.3d 867, 874 & n.6 (Mass. App. 2020).  Further, the subjective component requires a "strong negative emotion, such as fright or intimidation." Maguire, 65 N.E.3d at 1164.  Sexually coded nudity may be the sort of exposure most likely to cause such a reaction.  See Quinn, 789 N.E.2d at 143 (collecting cases arising from public sex or masturbation).  But it is nonetheless factually possible that nudity for a nonsexual purpose would cause objectively reasonable

alarm or shock that is "stronger than 'mere nervousness and offense.'"  See Maguire, 65 N.E.3d at 1164 (quoting Ora, 883 N.E.2d at 1220).

Even assuming, arguendo, that intent to alarm or shock equates to lewd intent, the government is also wrong to conflate a factfinder's conclusion that the defendant's conduct would alarm or shock a reasonable person with a finding that the defendant intended that result.  Indeed, the objective inquiry serves the statutory goal "to criminalize behavior that is shocking or alarming to society generally, as distinct from punishing the defendant for the effect of that conduct on particular victims." Maguire, 65 N.E.3d at 1165 (quotations omitted).  But the requirement that the defendant's conduct is objectively shocking or alarming does not impute to the defendant knowledge that his conduct will elicit such a reaction or an intent to do so.  Just as a witness could experience objectively unreasonable alarm or shock, a defendant's conduct could be objectively alarming without the defendant's subjective awareness of that fact.

Moreover, courts determine the reasonableness of a witness's alarm solely from the observer's perspective, bearing out that the defendant's mental state as to the manner of his nudity is beside the point.  See Commonwealth v. Taranovsky, 105 N.E.3d 266, 273 (Mass. App. 2018).  In Taranovsky, the court reversed the defendant's conviction under § 16 for walking along

- 14 -

an esplanade wearing only a thong while "sunbathing." Id. at 269. The court reasoned that the prosecution's showing as to the objective component was "arguably weak" because the complaining witness only observed "the defendant's buttocks from [a] distant vantage point" and "from the side." Id. at 273. The objective inquiry thus asks whether the defendant's conduct offended community norms from the "vantage point" of the alarmed witness and does not examine whether the defendant intended to flout those standards. See id.

Tellingly, "alarm or shock" is the aggravating factor that distinguishes § 16 from the lesser included offense of indecent exposure, a misdemeanor requiring only that the conduct be "offensive." Commonwealth v. Kessler, 817 N.E.2d 711, 774 (Mass. App. 2004). That Massachusetts attaches a worse punishment to a more severe impact on the witness suggests that § 16 is primarily concerned with preventing any nudity that is alarming or shocking to the community, regardless of the naked person's lewd intent or lack thereof. See Ora, 883 N.E.2d at 1220 (describing the statute's "central purpose . . . of preventing fright and intimidation, particularly regarding children").

A Massachusetts court certainly could construe § 16 as requiring both that the defendant intentionally exposed himself and that he did so in an intentionally lewd manner. But the government presses a construction that no case has adopted, see

- 15 -

Maguire, 65 N.E.3d at 1163-65, and at least one court has expressly disavowed.  See Commonwealth v. Queally, 770 N.E.2d 1002, 2002 WL 1461443 (Mass. App. 2002) (unpublished).[2]  Lest the foregoing were not enough, we turn to that case, which confirms the "realistic probability" that Massachusetts will apply § 16 to conduct lacking lewd intent.  See Da Graca, 23 F.4th at 113.

In Queally, the defendant had argued at trial that his conduct, which looked like masturbation to witnesses, was explained by a medical issue.  770 N.E.2d 1002 at *1.  On appeal, the court rejected the defendant's argument that, pursuant to the offense's proscription of "lewdness," § 16 "requires proof of the defendant's intent to engage in lustful or sexually gratifying conduct," an element not captured by the model jury instructions for the offense.  Id. at *2.  The court concluded that the "cases interpreting . . . § 16[] do not support . . . that an element of [sexual] intent" was required for conviction.  Id.

The court's conclusion in Queally manifests a "realistic probability" that Massachusetts will apply § 16 to conduct lacking lewd intent.  See Da Graca, 23 F.4th at 113.  Given that a

---

[2] We recognize that Queally, 770 N.E.2d 1002, is non-citable under Massachusetts Appeals Court Rule 23.0.  However, we do not cite it as legal precedent, but because it is probative of the question presented under the categorical approach.  See Da Graca, 23 F.4th at 113-14 ("[T]he focus of the realistic probability inquiry is on how a statute might be applied." (quotation and emphasis omitted) (alteration in original)).

- 16 -

Massachusetts Appeals Court discerned no legal requirement of sexual motivation from the relevant caselaw, it is more than a "theoretical possibility" that future courts and prosecutors will reach the same conclusion and apply § 16 to criminalize intentional exposures not involving moral turpitude. See id. (quoting Duenas-Alvarez, 549 U.S. at 193).

The government cannot defeat the realistic probability that Massachusetts will prosecute nonsexual nudity under § 16 by pointing to the ample cases in which defendants convicted of the offense in fact exhibited lewd intent. This inverts the analysis under the categorical approach, which asks "what the state conviction necessarily involved" by determining whether "the least of the acts criminalized" under the statute involves moral turpitude. Moncrieffe, 569 U.S. at 190-91 (quotation omitted). Here, the minimum conduct proscribed by § 16 is intentional and open exposure by the defendant, provided that the nudity is objectively shocking or alarming and actually alarms or shocks a witness. See Maguire, 65 N.E.3d at 1163. Because the judicially construed elements of § 16 on their face do not necessitate a finding of lewd intent, the offense is not a categorical match with the immigration-law definition of a CIMT. See Da Graca, 23 F.4th at 113; Cortes Medina, 6 I. & N. Dec. at 83.

**V.**

Lastly, Tomar argues that because "[t]here are no questions of fact[] left to be determined by the BIA," and this case turns on a "single question of law," the proper remedy is to reverse the BIA's decision rather than vacate and remand. The government offers no response to this argument. Although we generally "remand to the agency for additional investigation or explanation," in "rare circumstance[s] . . . the ordinary remand rule does not apply." Duarte de Martinez v. Bondi, 132 F.4th 74, 84-85 (1st Cir. 2025) (quoting Gonzales v. Tomas, 547 U.S. 183, 186 (2006)).

The Third Circuit has held that "remand to the BIA is not required and the Court of Appeals may address an issue in the first instance where: (1) it is purely legal; (2) it does not implicate the agency's expertise; (3) review would be de novo; and (4) no fact-finding is necessary." Vurimindi v. U.S. Att'y Gen., 46 F.4th 134, 140 (3d Cir. 2002). Each of those circumstances is present here. In such circumstances, "the agency's decision [on remand] would be nothing more than an 'idle and useless formality,' rendering remand futile and unnecessary." Id. (quoting NLRB v. Wyman-Gordon Co., 394 U.S. 759, 766 n.6 (1969)). Here, the BIA has already answered the purely legal question presented in Tomar's case as to whether § 16 is a categorical CIMT, and we reach the opposite legal conclusion on petition for review. As such, we

- 18 -

agree with Tomar that this is the rare case in which remand to the BIA for consideration of that issue would be futile and reversal is appropriate.  See Duarte de Martinez, 132 F.4th at 84-85.

**VI.**

For all these reasons, we hold that § 16 is not a categorical crime involving moral turpitude because a conviction under the statute does not require proof of lewd intent.  The BIA legally erred in concluding the opposite.  Because § 16 is not a categorical CIMT, Tomar's two convictions do not render him deportable pursuant to § 1227(a)(2)(A)(ii).[3]  The petition for review is therefore **granted**, the order of the BIA is **reversed**, and the matter is **remanded** to the agency for further proceedings consistent with this opinion.

---

[3] Neither the parties nor the BIA have asserted that § 16 is divisible such that the modified categorical approach may be applied.  See Descamps v. United States, 570 U.S. 254, 260 (2013); Cisneros-Guerrerro v. Holder, 774 F.3d 1056, 1061 (5th Cir. 2014).